FRANK V. KALETHA, JR. AND DELORIS KALETHA, HUSBAND AND WIFE *v.* BORTZ ELEVATOR CO., INC., PINOLA ELEVATOR CO., INC., ROBERT BORTZ AND GABE ENGEL.

[No. 3-476A79. Filed December 28, 1978.]

*Glenn J. Tabor, Blachly, Tabor, Bozik & Hartman,* of Valparaiso, for appellants.

*Edward L. Volk, Leon R. Kaminski, Newby, Lewis, Kaminski & Jones,* of LaPorte, for appellees-Bortz Elevator Co. and Robert Bortz, *Thomas F. McKenna, Kenefick & Brennan,* of Michigan City, for appellees-Pinola Elevator Co., Inc. and Gabe Engel.

STATON, J. — Frank V. Kaletha, Jr., and Deloris Kaletha, husband and wife, (Kaletha) filed a complaint against Bortz Elevator Co., Inc., Pinola Elevator Co., Inc., Robert Bortz, and Gabe Engel alleging the intentional infliction of emotional distress.[1] The defendant elevator companies filed a joint motion to dismiss the complaint under Ind. Rules of Procedure, Trial Rule 12(B). The trial court considered the motion, together with interrogatories, admissions, and other matters outside the pleadings; in accordance with TR. 12(B), it then treated the motion as a motion for summary judgment, TR. 56. The trial court granted the motion for summary judgment.

Kaletha appeals and asserts that the trial court erred in granting the motion for summary judgment.[2] Two questions have been preserved for review:

(1)   Does Indiana recognize the independent tort of intentional infliction of mental distress?

(2)   Was the complaint filed beyond the statute of limitations?

The trial court was correct in holding that there existed no genuine issue as to any material fact and that the moving parties (elevator companies) were entitled to a judgment as a matter of law. We affirm.

## I.

### Cause of Action

On February 20, 1973, Robert Bortz of Bortz Elevator Co., Inc. (Bortz)

---

1.   Kaletha's complaint alleged defamatory conduct, but Kaletha later characterized the action as one for the intentional infliction of mental distress. That is how the issue was treated by the trial court, and that is how the issue has been briefed on appeal. Therefore, we do not address the defamation problem.

2.   Kaletha has erroneously designated his appeal as arising from the granting of a motion to dismiss. He states that the court erred because there was no showing that Kaletha would be denied recovery under *any set of facts*. Once a TR. 12(B) motion is treated as a TR. 56 motion, the trial court need only consider whether a genuine issue of material fact has been placed in controversy by the pleadings or other evidence allowable under TR. 56. The last memorandum in support of the motion to dismiss (which specifically asked that the trial judge treat the motion to dismiss as a motion for summary judgment) was filed September 16, 1975. Kaletha filed *nothing further*. The court ruled on the motion for summary judgment a month later (October 15, 1975). There was no showing that Kaletha was denied an opportunity to present evidence relating to the TR. 56 motion. Therefore, our enquiry is restricted only to the facts in the record. We are not at liberty to imagine a situation in which Kaletha might have prevailed.

wrote the following letter to Gabe Engel of Pinola Elevator Co., Inc. (Pinola):

"Dear Gabe:

This letter is to inform you that Frank Kaletha Jr., owes our elevator a considerable amount of money. This account was for seed, chemicals, and fertilizer for the 1972 crops. His agreement with us was to pay for it with his grain. We have not received any money from him in 1973 and I'm sure he has harvested some of his crops[.] Therefore, your help in protecting our lien on the grain would be appreciated.

Respectfully

Bob Bortz"

Pinola received the letter on February 21, 1973. On March 10, 1973, the contents of the letter were communicated by Pinola to Kaletha during a telephone conversation. The record does not reveal who initiated the telephone conversation or for what purpose the conversation was initiated. The letter was shown to Kaletha on March 19, 1973. Sometime thereafter, Kaletha suffered a coronary ailment which he alleges stemmed from the emotional distress engendered by the letter. Kaletha requested compensatory and punitive damages against the elevator companies in the amount of $250,000.00; he filed his complaint on March 6, 1975.

In his brief, Kaletha has alleged that the emotional distress which caused his heart problems was caused intentionally by the elevator companies. He elucidates and explains that in his occupation he relies on the ability to obtain credit; he claims that the letter caused him anguish that his ability would be impaired. The anguish then resulted in the physical manifestation.

II.

Intentional Infliction of Emotional Distress

From the answers to interrogatories and admissions filed with the trial court, we glean these undisputed facts:

(1)  There was no physical touching of Kaletha by any defendant.

(2) The defamation and injury stemmed from the publication of the February 20, 1973, letter.

(3) Kaletha first became aware of the contents of the letter on March 10, 1973.

(4) Kaletha was indebted to Bortz on February 20, 1973; the indebtedness continued through March 10, 1973.

(5) Kaletha was indebted to Bortz in the amount of $2,034.65 at the time the complaint was filed.

(6) Kaletha suffered from heart problems and arteriosclerosis prior to March 10, 1973.

(7) Kaletha had no knowledge of any heart problems or arteriosclerosis as of March 10, 1973.

(8) Kaletha had done business with Pinola prior to March 10, 1973.

Kaletha did maintain in his answers to requests for admissions that discovery might reflect other defamatory or injurious conduct. However, as of the date that the trial judge ruled on the summary judgment motion, Kaletha had not alleged any additional injurious conduct.

"Indiana does not recognize as an independent tort the infliction of mental anguish unaccompanied by contemporaneous physical injury or the breach of some other duty. . . ."

*Berrier v. Beneficial Finance, Incorporated* (U.S.D.C., N.D. Ind. 1964), 234 F.Supp. 204, 205. The Indiana Court of Appeals has cited the *Berrier* decision and has added, "[d]amages for mental anguish are recoverable in special factual situations, . . ." *Jeffersonville Silgas, Inc. v. Wilson* (1972), 154 Ind.App. 398, 290 N.E.2d 113, 117. The special factual situations exception was detailed in *Charlie Stuart Oldsmobile, Inc. v. Smith* (1976), 171 Ind.App. 315, 357 N.E.2d 247, 254.

"Indiana courts have awarded compensatory damages for mental anguish unaccompanied by a physical injury in certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. . . . The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension. . . ." (Citations omitted.)

Kaletha would argue that the conduct of the elevator companies qualified under the special exception. We disagree. There was no contemporaneous physical injury, and there was no invasion of a legal right.

Kaletha has admitted that he had dealt with Pinola prior to the publication of the letter. He has also admitted that the letter is substantially true (*i.e.*, he owed Bortz a considerable amount of money). Bortz's letter was essentially either an attempt by Bortz to collect the debt owed or to inform another possible creditor of Kaletha of the priority of Bortz's lien. We cannot countenance the award of damages for mental anguish without a showing that the injury was inspired by fraud, malice, or like motives, involving intentional conduct. *Charlie Stuart Oldsmobile, Inc. v. Smith, supra.*

"An intentional injury results from an act done for the purpose of causing the injury or with knowledge that the injury is substantially certain to follow." *Lutteman v. Martin* (1957), 20 Conn.Supp. 371, 135 A.2d 600, 602. "[T]here is a distinction between an intentional act and an intentionally caused injury." *Smith v. Moran* (1965), 61 Ill.App.2d 157, 209 N.E.2d 18, 20-21. Kaletha has admitted that he had health problems before the publication of the letter; he has also maintained that he had had no knowledge of health problems before the letter was written by Bortz. Assuming that the action of the elevator companies was intentional, there was no showing that the companies intended to cause Kaletha injury. If Kaletha himself had no knowledge of his infirmities, we cannot attribute knowledge of his infirmities to Bortz or Pinola.

### III.

### Debt Collection

Reasonable debt collection efforts must be upheld. Even where the debtor's privacy is invaded to a certain extent, a creditor is not liable unless the creditor divulged information to one who had no legitimate interest in the information and unless the information was divulged in a manner that was coercive and oppressive. *Patton v. Jacobs* (1948), 118 Ind.App. 358, 78 N.E.2d 789.

Kaletha admitted owing money to Bortz. Kaletha admitted that he had done business with Pinola prior to the publication of the letter. Bortz,

then, had an interest to protect. Kaletha was a farmer and trucker who regularly hauled grain. Grain, being a fungible commodity, is not easily traced once commingled. We need not concern ourselves with the question of whether Kaletha *had* paid Bortz any money in 1973. The resolution of that factual issue was not material to the dispute once Kaletha designated the issue as intentional infliction of emotional distress rather than defamation. Rather, we need only determine whether Bortz's debt collection effort was reasonable under the circumstances.

This was not a situation in which the publication was directed toward the entire world.[3] Bortz wrote an informational letter to Pinola. We do not even know what prompted Pinola's disclosure of the contents of the letter to Kaletha. Kaletha did maintain in an answer to a request for admissions that, "Pinola Elevator Company honored and followed the requests contained in said letter." A reasonable inference to be drawn from this statement is that Kaletha asked Pinola for credit, and when Pinola refused, the contents of the letter were disclosed as a basis for the refusal.

Prosser has stated that "the rule which seems to be emerging is that there is liability only for conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind." Prosser, *Intentional Infliction of Mental Suffering: A New Tort,* 37 Mich.L.Rev. 874, 889 (1939).[4] Kaletha completely failed to allege or show how Bortz's action exceeded all bounds which could be tolerated by society. The Restatement of Law, 1948 Supp., Torts, § 46, Comment *g* explains:

> "The prohibited conduct is conduct which in the eyes of decent men and women in a civilized community is considered outrageous and intolerable. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim 'Outrageous!' "

3. *Brents v. Morgan* (1927), 221 Ky. 765, 299 S.W. 967 (posting sign in window); *Trammell v. Citizens News Co.* (1941), 285 Ky. 529, 148 S.W.2d 708 (publication in newspaper).

4. Prosser has borrowed a word from the vernacular of Kentucky and points south and called the new tort "orneriness." "It is something very like assault. It consists of the intentional, outrageous infliction of mental suffering in an extreme form." Prosser, *Intentional Infliction of Mental Suffering: A New Tort,* 37 Mich.L.Rev. 874 (1939).

Dean Prosser adds that in debt-collection cases, "[i]t is seldom that any one such item of conduct is found alone in a case; and the liability usually has rested on a prolonged course of hounding by a variety of extreme methods." W. Prosser, Law of Torts, ch. 2, § 12, 57 (4th ed. 1971). "[E]xcept in cases where the defendant has knowledge of the plaintiff's peculiar susceptibility and practices upon it, the distress must be such as a reasonable man 'of ordinary sensibilities' would undergo under the circumstances." W. Prosser, Law of Torts, ch. 2, § 12, 59 (4th ed. 1971). Not only did Bortz not know of Kaletha's physical condition, there was no showing that Bortz even intended that Kaletha be informed of the contents of the letter.

The trial court did not err in finding, as a matter of law, that summary judgment should be granted in favor of Bortz and Pinola.

## IV.

### Statute of Limitations

The parties conceded that the two-year statute of limitations (IC 1971, 34-1-2-2, Ind.Ann.Stat. § 2-602 [Burns Code Ed.]) is applicable. The only question is when the two-year period began to run. A statute of limitations begins to run when a person becomes liable to an action. *Merritt v. Economy Department Store* (1955), 125 Ind.App. 560, 128 N.E.2d 279. If there had been any liability established, it would have stemmed from the letter written on February 20, 1973, and received February 21, 1973. Kaletha's complaint, filed March 6, 1975, was beyond the statutory period.

Finding no error, we affirm the granting of the summary judgment.

Hoffman, J. and Garrard, J., concur.

NOTE—Reported at 383 N.E.2d 1071.