**Joseph SARRATORE, Plaintiff,**

v.

**LONGVIEW VAN CORPORATION and Don Long, Defendants.**

**No. S 87–87.**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 5, 1987.

Robert F. Gonderman, Jr., South Bend, Ind., for plaintiff.

Michael A. Cosentino and R. Michael Parker, Elkhart, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The complaint in this case was filed February 17, 1987, and is in seven counts. The defendants, Longview Van Corporation and Don Long, filed a Motion to Dismiss Counts I, II, III, IV and VII pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on April 13, 1987. On April 24, 1987, the court heard oral argument on the motion to dismiss, and the parties were given to May 18, 1987, to submit supplemental briefs. All parties submitted briefs. Subsequently, the plaintiff amended his complaint, and on June 6, 1987, the defendant moved to dismiss the same counts in the amended complaint. The plaintiff filed a response to that motion on June 25, 1987.

Count I appears to attempt an invocation of federal question jurisdiction by attempting to state a private cause of action under 15 U.S.C. § 1989 invoking federal question jurisdiction under 28 U.S.C. § 1331. The face of the complaint also alleges facts which support jurisdiction premised upon Section 1332 of Title 28 of the United States Code. Diversity of citizenship exists since the plaintiff is alleged to be a resident of Michigan and the corporate defendant has its principal place of business in Indiana and the individual defendant resides in Indiana. The complaint was challenged by a motion to dismiss by both defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure and oral argument was heard thereon on April 24, 1987. All of the issues raised were the subject of extensive argument by able counsel and the court has been favored with extensive briefs which are most helpful.

### II.

The court in analyzing a motion to dismiss utilizes the standards established by the Supreme Court of the United States in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *Hishon v. King & Spaulding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The Supreme Court in *Conley* held that:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed ... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. at 102 (1957); *accord, Hishon*, 467 U.S. at 73, 104 S.Ct. at 2232; *Vaden v. Village of Maywood, Illinois*, 809 F.2d 361, 363 (7th Cir.1987); *Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 735 (7th Cir.1986); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 973 (7th Cir.1986). In addition, "we must accept as true all well-pleaded factual allegations in the complaint." *Vaden*, 809 F.2d at 363; *Doe on behalf of Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411 (7th Cir.1986); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). Further, "pleadings are to be liberally construed and mere vagueness or lack of detail doe not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985); *accord, Doe on behalf of Doe v. St. Joseph Hospital of Fort Wayne*, 788 F.2d at 414. "A complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory." *Carl Sandberg Village Condominium Ass'n v. First Condominium Development Co.*, 758 F.2d 203, 207 (7th Cir.1985), citing, *Sutliff v. Donovan*, 727 F.2d 648, 654 (7th Cir.1984).

### III.

In Count I the plaintiff, Joseph Sarratore, alleges that he was fired from his job with the defendant, Longview Van Corporation, as a result of his refusal to partic-

ipate in an illegal scheme to setback odometers. The Motor Vehicle Information and Cost Savings Act as found in 15 U.S.C. §§ 1981–1991 was subject to an early consideration by this court in *Grambo v. Loomis Cycle Sales, Inc.*, 404 F.Supp. 1073 (N.D.Ind.1975). At page 1075 this court stated:

> Being a relatively new statute, the courts have generally given the Motor Vehicle Information and Cost Savings Act a practical interpretation. *Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397 (S.D.W.Va. 1975); *Delay v. Hearn Ford*, 373 F.Supp. 791 (D.S.C.1974).

Specifically, § 1981 provides:

> Congressional findings and declaration of purpose
>
> The Congress hereby finds that purchasers, when buying motor vehicles rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability; and that motor vehicles move in the current of interstate and foreign commerce or affect such commerce. It is therefore the purpose of this subchapter to prohibit tampering with odometers on motor vehicles and to establish certain safeguards for the protection of purchasers with respect to the sale of motor vehicles having altered or reset odometers.

In *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.1979), that court stated that the aforesaid statute is obviously remedial in nature and should be given a broad construction to effectuate its purpose. Most recently in *Hughes v. Box*, 814 F.2d 498 (8th Cir.1987), a similar reading was invoked. *See also United States v. General Motors Corp.* 518 F.2d 420 (D.C.Cir.1975).

The defendants assert that the purpose of § 1989 is to afford a remedy to the purchaser of a motor vehicle. That is certainly one of its principal purposes but to say that such is the only purpose is to read both the language of the statute itself and its legislative history too narrowly. The Senate Report No. 92–413, U.S.Code Cong. & Admin.News 1972, p. 3960 dealing with Title 4 of the Act states:

> Title 4 of the bill sets forth certain requirements related to motor vehicle odometers (mileage indicator) because consumers rely upon odometer readings as an index of the condition and value of motor vehicles, Title 4 mandates a national policy against disconnecting of, or setting back of, odometers in order to defraud purchasers of motor vehicles. Presently some 17 states have enacted legislation to curb this practice. However, states without such legislation have found this practice on the increase, especially when a neighboring state has an odometer law. Odometers are turned back in to (sic) states without odometer laws and then cars are marketed at inflated values in states with such laws. Thus, state odometer laws are easily circumvented and people in a state without such a law suffer because of this practice. By prohibiting the disconnecting or turning back of odometers, Title 4 would establish a national policy against odometer tampering and prevent customers from being victimized by such abuses.

The plaintiff's counsel argues for a "private attorney general" concept being inherent in the provisions of this statute. *Compare, Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This court is most reluctant to read that rather expansive concept into the statute and does not necessarily have to adopt that idea to find that the plaintiff's complaint here states a claim sufficient to withstand a motion to dismiss under Rule 12(b)(6). This court is impressed with the salient argument made by the plaintiff that an employer should not be able to fire an employee for refusing to violate 15 U.S.C. § 1989. Such could seriously undermine the basic legislative values that were the subject matter and concern of the Congress as reflected in the legislative history of this enactment.

As a backup position, the defendants engage in a nitpicking process with regard to Count I challenging its sufficiency as to time, place and circumstances. Count I may not be a masterpiece of pleading but it is sufficient as notice pleading and the various items that are challenged on the bottom of page 8 and the top of page 9 of the defendants' supplemental memorandum filed May 18, 1987, do not mandate a dismissal. Certainly this result is consistent with the values expressed by the Supreme Court of the United States that when challenged by a Rule 12(b)(6), the complaint should be construed in the light most favorable to the plaintiff.

It is important to note that both § 1989 and § 1984 of the Act used the phrase "person".[1] In fact, § 1989 uses the phrase "any person" amd § 1984 uses "no person". That very language has been discussed in another district court in this circuit. In *Mataya v. Behm Motors, Inc.*, 409 F.Supp. 65 (E.D.Wis.1976), the court stated:

> The language in § 1989 'any person * * shall be liable' indicates no intent to limit liability to the immediate seller of a motor vehicle, but to extend liability to and impose liability upon any person violating the law.

*Mataya*, 409 F.Supp. at 68 (*citing, Stier v. Park Pontiac, Inc.*, 391 F.Supp. 397 (S.D. W.Va.1975)). The principal purpose of this statute was to impose a certain variety of forced honesty in the sale of motor vehicles which was triggered by congressional concern of the widespread practice of the clandestine turning back of odometers.

The plaintiff here must prove the allegations of his complaint there was clearly not one but numerous violations of § 1989.

The plaintiff must also prove that there were injuries or damages which proximately resulted from such violations in order to trigger remedial provisions of the Act. Consequently, the plaintiff has stated, in Count I, a claim upon which, if the allegations are proven, relief can be granted.

## IV.

The remaining Counts of the complaint appear to invoke the substantive law of Indiana and are premised on the existence of diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

■ Count II is based upon the concept of wrongful or retaliatory discharge in Indiana and in order to discuss it one needs to start with the decision in *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973), in which it was held that the plaintiff had a claim for retaliatory discharge when she alleged that she was terminated from her employment as a result of filing a workmen's compensation claim. (The scope and sweep of *Frampton* were limited by this court and the Court of Appeals for the Seventh Circuit in *Vantine v. Elkhart Brass Manufacturing Co. Inc.*, 572 F.Supp. 636 (N.D.Ind.1983), *aff'd*, 762 F.2d 511 (7th Cir.1985)).

More to the point in this case, the court must examine the interplay and the possible applicability to these facts of two recent decisions, one by the Supreme Court of Indiana and another by the Indiana Court of Appeals. The first one was *Morgan Drive Away, Inc. v. Brant*, 489 N.E.2d 933 (Ind.1986), and the second, *McClanahan v. Remington Freight Lines, Inc.*, 498

---

**1.** 15 U.S.C. § 1984 reads:

No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent to change the number of miles indicated thereon.

15 U.S.C. § 1989 reads:

(a) Any person who, with intent to defraud, violate any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

(b) an action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within two years from the date on which the liability arises.

N.E.2d 1336 (Ind.App. 2 Dist.1986), *transfer granted,* —— N.E.2d —— (Ind. May 18, 1987). A recent and extensive diagnosis of the *Morgan Drive Away* case can be found in *Morgan Drive Away, Inc. v. Brant: Indiana Topples a Milestone in the Law of Retaliatory Discharge,* 20 Ind.L.Rev. 559 (1987).

In the *Morgan Drive Away* case Marion R. Brant had performed services for Morgan pursuant to a series of contracts and a dispute arose in regard thereto. Brant filed a small claims action demanding payment for his services. When Morgan refused to further utilize Brant's services, Brant brought another suit alleging that his termination was a wrongful retaliatory discharge invoking the teaching of *Frampton v. Central Indiana Gas Co.* The jury that heard that case, although not required to determine whether Brant was an employee or an independent contractor, awarded both compensatory and punitive damages. The employer Morgan appealed and the Court of Appeals of Indiana reversed and remanded as reported at *Morgan Drive Away v. Brant,* 479 N.E.2d 1336 (Ind.App. 3 Dist.1985). The Supreme Court of Indiana speaking through Justice Dickson held that the plaintiff's allegations that he had been terminated solely for filing a small claims action to recover payment due did not entitle him to an action for retaliatory discharge. Justice Dickson distinguished *Frampton* as follows:

> The plaintiff in *Frampton* brought a damage action against her employer alleging that she was discharged in retaliation for asserting claims for workmen's compensation benefits. After reviewing the purpose and role of the workmen's compensation statutes and noting the statutory prohibition against any device which operates to relieve the employer of obligations created by the Workmen's Compensation Act, the court held the threat of discharge to be a prohibited "device." This was an issue of first impression, and the well-reasoned *Frampton* decision serves as a milestone in the march of Indiana common law.

> \* \* \* \* \* \*

Since *Frampton,* however, Indiana courts have refused to recognize retaliatory discharge actions in cases not involving workmen's compensation claims. *Martin v. Platt* (1979) 179 Ind.App. 688, 386 N.E.2d 1026, denied an action for retaliatory discharge where terminated employees claimed that their discharge was in retaliation for having reported to a company official that their immediate superior had solicited and received illegal "kickbacks" from company suppliers. *McQueeney v. Glenn* (1980), Ind.App., 400 N.E.2d 806, *cert. denied* (1981), 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112, rejected plaintiff's contention that termination because of her marriage constituted actionable retaliatory discharge. *Campbell v. Eli Lilly and Co.* (1980), Ind.App., 413 N.E.2d 1054, affirmed summary judgment against an employee who claimed that his discharge was in retaliation for charging the employer with practices contrary to the federal drug regulatory scheme and regulations.

> The employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State. See, discussion in *Campbell, supra,* 413 N.E.2d at 1060. Revision or rejections of the doctrine is better left to the legislature. We therefore decline this opportunity to extend *Frampton* to the facts of the instant case.

*Morgan Drive Away,* 489 N.E.2d at 933–34.

Approximately eight months after the decision in *Morgan Drive Away Inc. v. Brant,* the Court of Appeals of Indiana, speaking through Judge Sullivan, decided *McClanahan v. Remington Freights Lines, Inc. supra.* In *McClanahan* a truck driver alleged that he was fired for refusing to drive a load in violation of State weight restrictions and he alleged wrongful discharge regarding the same against his employer. The State trial court entered summary judgment in favor of the employer and the truck driver appealed. The Court of Appeals held that the truck driver had a wrongful discharge claim or cause of action and that the administrative decision as to the reason and justification for dis-

charge in connection with unemployment benefits was entitled to collateral estoppel. Since there is no reference to the second issue in the record of this case the only applicability that *McClanahan* may have is on the issue of whether there is retaliatory discharge claim within *Frampton*. In Part I of a carefully constructed and very detailed opinion Judge Sullivan states:

> Finally, Remington and Barbour point to the Indiana Supreme Court's recent decision in *Morgan Drive Away, Inc. v. Brant* (1986) Ind., 489 N.E.2d 933, in which the court found that an employee who alleged he had been discharged for filing a small claims action for payment of services could not bring an action for retaliatory discharge against his employer. *Morgan Drive Away* is more difficult to reconcile with our reading of *Frampton* in that the employee's right to payment of wages was statutorily conferred by I.C. 22-2-4-4 (Burns Code Ed. 1974). However, we must again note that in the case before us we are concerned with an employee who alleges he was discharged solely for refusing to breach a statutorily imposed duty. While the Supreme Court's decision in *Morgan Drive Away* may indicate that not all statutorily conferred rights are entitled to the protection of the *Frampton* exception, we do not believe that the court meant to hold that an employee discharged for refusing to breach a statutorily imposed duty is to be left without redress. We simply cannot accept an interpretation of the *Morgan Drive Away* decision which would allow an employer to force an employee to choose between breaking the law and losing his job.

> \*    \*    \*    \*    \*    \*

> The language in *Frampton* indicates that the court did not intend its holding to be limited to cases involving workmen's compensation claims. "[W]hen an employee is discharged solely for exercising a *statutorily conferred right* an exception to the rule must be recognized." *Frampton, supra,* 297 N.E.2d at 428 (Emphasis supplied). To narrow the application of the *Frampton* exception to

> only those cases involving workmen's compensation claims would seem contrary to the unambiguous holding of the *Frampton* court. We cannot believe that the Supreme Court intended for *Morgan Drive Away* to have such effect, especially in light of the court's reference in *Morgan Drive Away* to *Frampton* as "a milestone in the march of Indiana common law." *Morgan Drive Away, supra,* 489 N.E.2d at 934. Surely the court did not intend for the march to halt and become a full-fledged retreat. Our Supreme Court clearly does not wish the Frampton door through the employment at will barrier opened so wide as to allow entry to every discharged and disgruntled employee. *Morgan Drive Away* makes clear that the statutorily conferred right to wages will not give passage through the door, but the decision does not state what, if any, other statutorily conferred rights will be unavailing. Such determinations must be made on a case by case basis, taking into account such factors as the legislative intent, whether the statute actually confers a right or merely a privilege, and the extent to which exercise of the statutorily conferred right interferes with the employee's performance of those duties which the employer may legally require of him. (footnotes omitted)

*McClanahan,* 498 N.E.2d at 1340.

The reasoning and result as above quoted from the *McClanahan* opinion leads this court to the conclusion that *Morgan Drive Away v. Brant* does not as a matter of law prevent this plaintiff employee from asserting this claim for retaliatory discharge against this defendant employer. The facts in this case are in contrast to those in *Morgan Drive Away* because there the relationship of employer-employee was disputed, and the plaintiff did not allege that he was discharged for refusing to violate a statutorily imposed duty. Both of those factual allegations were present in *McClanahan* and they are present here.

It is the burden of this court to follow the law as stated by the highest court of the State of Indiana. In the Supreme

Court's opinion in *Morgan Drive Away,* there are strictures on the common law claim first enunciated in *Frampton.* However, the core concept is still alive and well in the State of Indiana as reflected both in *Morgan Drive Away* and in *McClanahan.* The scope of the cause of action or claim authorized in *Frampton* is not limited to situations where the employee files a workmens' compensation claim and is discharged in retaliation therefor. The allegations are therefore sufficient in the face of a Rule 12(b)(6) motion to withstand a dismissal.

## V.

Count III of the plaintiff's complaint purports to state some species of claim for fraud assumably under the law of Indiana and on its face it fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure as well as the law of Indiana regarding the specificity with which such fraud must be alleged. See *Dutton v. International Harvester,* 504 N.E.2d 313, 318 (Ind.App. 1987). The basic elements of common law fraud in Indiana were very recently restated by Judge Ripple in *Monarch Beverage Co., Inc. v. Tyfield Importers, Inc.,* 823 F.2d 1187, 1191–1192, (7th Cir.1987). Therefore, Count III is **DISMISSED WITHOUT PREJUDICE.**

## VI.

Count IV appears to attempt to assert a common law claim for defamation that has a particular and recent twist thereto. It is conceded in the pleadings and in the oral argument that the defendants did not publish the circumstances surrounding the plaintiff's termination to a third party. The plaintiff attempts to rely on the recent and limited common law concept of "doctrine of compelled self-publication" citing a recent decision by the Supreme Court of Minnesota in *Lewis v. Equitable Life Assurance Society,* 389 N.W.2d 876 (Minn. 1986). A search on LEXIS reveals that although *Lewis v. Equitable Life Assurance Society* has been cited several times since it was decided, no court has cited it for the "doctrine of self-publication".

In oral argument plaintiff's counsel conceded that the doctrine announced in *Lewis v. Equitable Life Assurance Society* was not the law of Indiana but asked this court to make an educated guess or prediction that if confronted with the question the Supreme Court of Indiana would adopt the same. Plaintiff's counsel argued a bit of judicial history in the federal judiciary and in the State of Indiana in the 1960s and 1970s in regard to section 402(a) of the Restatement of Torts 2d. He specifically cited the opinion of Judge Eschbach of this court in *Greeno v. Clark Equipment,* 237 F.Supp. 427 (N.D.Ind.1965) and other cases in this court and in the Court of Appeals for this circuit dealing with the subject of strict liability in tort. See *Dagley v. Armstrong Rubber Co.,* 344 F.2d 245 (7th Cir. 1965); *Sills v. Massey-Ferguson,* 296 F.Supp. 776 (N.D.Ind.1969). This judge was a direct participant on the state side of that judicial equation. See *Perfection Paint & Color v. Konduris,* 147 Ind.App. 106, 258 N.E.2d 681 (1970); *Cornette v. Searjeant Metal Products,* 147 Ind.App. 46, 258 N.E.2d 652 (1970). Finally in 1973 the Supreme Court of Indiana did approve the earlier adoption of the ideas and concepts in section 402(a) as part of the common law of the State of Indiana. *See Ayr-Way Stores, Inc. v. Chitwood,* 261 Ind. 86, 300 N.E.2d 335 (1973). It goes without saying that the development of the ideas embedded in section 402(a) of the Restatement of Torts 2d was the product of a long series of judicial decisions as well as an extensive effort at scholarship by the American Law Institute. As early as 1944 Judge Roger B. Traynor had announced those concepts in a concurring opinion in the Supreme Court of California. *See, Escola v. Coca Cola Bottling Co.,* 24 Cal.2d 453, 150 P.2d 436 (1944). In 1965 the American Law Institute, after extensive proceedings, adopted section 402(a) as a part of the Restatement of Torts 2d. There followed immediately a considerable number of court decisions throughout the country, including the ones in this district and circuit following and applying those concepts. It was in that context that Judge Eschbach in *Greeno v. Clark Equipment* indeed nudged the highest courts in the State of Indiana to follow what was then a clearly established trend with re-

gard to strict liability in tort. By the time the Appellate Court of Indiana acted in 1970 and the Supreme Court of Indiana acted in 1973, there was a robust and emerging body of law that clearly pointed in the direction of strict liability in tort.

As a proud participant in that brief moment in judicial history in the State of Indiana this judge must say in all deference that as appealing as the doctrine of compelled self-publication may be and as respectful as one must be to its creator there simply is not the historical and judicial context at this time to predict under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) that the Supreme Court of Indiana would adopt *Lewis v. Equitable Life Assurance Society* as the law of Indiana. It might and again, it might not. Unless the judicial landmarks are so clearly evident as to point in a single direction on that subject, this court should not presume upon the functions of the Supreme Court of Indiana or indeed the Court of Appeals of Indiana with regard to the proper development of the common law in Indiana. Therefore this court respectfully declines to make that *Erie* educated guess and now **DISMISSES** Count IV of the plaintiff's complaint for that reason.

### VII.

Count VII of the plaintiff's complaint attempts to assert a claim or cause of action on the basis of something described as "outrageous conduct". Although, the tort of "outrage" has been discussed in two Indiana court of appeals cases, neither case embraced the tort as applicable under Indiana common law. *See, Naughgle v. Feeney-Hornak Shadeland Mortuary*, 498 N.E.2d 1298 (Ind.App. 1 Dist.1986); *Kaletha v. Bortz Elevator, Inc.*, 178 Ind.App. 654, 383 N.E.2d 1071 (1978). This court is well aware that there has existed in the law of Indiana for a long time the concept of the intentional infliction of mental pain and suffering. *See, Naughgle v. Feeney-Hornak Shadeland Mortuary*, 498 N.E.2d 1298 (Ind.App. 1 Dist.1986); *Baker v. American States Insurance Co.*, 428 N.E.2d 1342 (Ind.App. 1 Dist.1981) (*trans. denied; Indiana Motorcycle Association v. Hudson*, 399 N.E.2d 775 (Ind.App. 1 Dist. (1980); *Kaletha v. Bortz Elevator Co., Inc.*, 178 Ind.App. 654, 383 N.E.2d 1071 (1978). If Count VII was intended to state a claim for intentional infliction of mental pain and suffering, it fails to do so. Absent the charge of the deliberate or wilful infliction of mental pain and suffering Indiana still adheres to the common law concept that for purely mental anguish there must be some species of physical injury. See *Kaletha v. Bortz Elevator Co., Inc.*, 178 Ind.App. 654, 383 N.E.2d 1071 (1978). See also *Charlie Stuart Oldsmobile, Inc. v. Smith*, 171 Ind.App. 315, 357 N.E.2d 247 (1976). *Compare, Naughgle v. Feeney-Hornak Shadeland Mortuary, Inc.*, 498 N.E.2d 1298 (Ind.App. 1 Dist. 1986). Therefore there would not appear to be anything alleged in Count VII that can survive a motion to dismiss that has not already been alleged in Count II.

Accordingly, and for all the above reasons, it is the **ORDER** of the Court that the defendants', Longview Van Corporation and Don Long, Motion to Dismiss be, and is hereby, GRANTED IN PART WITHOUT PREJUDICE as to Counts III, IV and VII; and DENIED IN PART as to Counts I and II. SO ORDERED.