**William D. WATTERS and Vicki Watters, Appellants–Plaintiffs,**

v.

**David M. DINN and St. Francis Hospital Center, Appellees–Defendants.**

No. 32A01–9301–CV–13.

Court of Appeals of Indiana, First District.

April 27, 1994.

Transfer Denied Sept. 30, 1994.

Russell T. Clarke, Jr., Emswiller, Williams Noland & Clarke, Indianapolis, Linda Meier, Sargent & Meier, Greenwood, for appellants.

Geoffrey Segar, Sherry A. Fabina–Abney, Ice Miller Donadio & Ryan, Indianapolis, for St. Francis Hosp. Center.

Timothy J. Hulett, Douglas A. Tresslar, Harrison & Moberly, Indianapolis, for David M. Dinn as defendant.

David M. Dinn, pro se as counterclaim plaintiff.

Children's Rights Counsel, Inc., Washington, DC, amicus curiae on behalf of counterclaim plaintiff David M. Dinn.

NAJAM, Judge.

## STATEMENT OF THE CASE

William and Vicki Watters appeal from the entry of summary judgment for St. Francis Hospital and for David Dinn, Vicki's former husband, in the Watters' action arising from the Hospital's release of William's mental health records to David.[1] Vicki and David were parties to a custody modification proceeding for their three children. Without notice to the Watters, David or someone acting on his behalf served a subpoena duces tecum on the Hospital to obtain William's mental health records and then used those records in the custody case and in other, unrelated small claims litigation between David and William.

The Watters filed suit against the Hospital and David alleging: (1) violation of the Rights of Persons Being Treated for Mental Illness or Developmental Disabilities statute and the Access to Health Records statute; (2) breach of the physician-patient privilege; (3) abuse of process; (4) invasion of privacy; (5) intentional infliction of emotional distress; and (6) loss of consortium. David filed several counterclaims. Both the Hospital and David moved for summary judgment against the Watters, and David moved for summary judgment on his counterclaims. The trial court entered summary judgment for the Hospital and David as defendants but entered summary judgment for the Watters on David's counterclaims.

We affirm in part, and reverse and remand in part.

## ISSUES

We review whether summary judgment was proper on the following issues:

1. Whether the Hospital violated the 1987 versions of the Rights of Persons Being Treated for Mental Illness or Developmental Disabilities statute and the Access to Health Records statute, Indiana Code § 16–14–1.6–1 *et seq.* and Indiana Code § 16–4–8–1 *et seq.*, respectively.

2. Whether the Hospital had a duty to assert the physician-patient privilege on William's behalf.

3. Whether the Hospital and David committed an abuse of process.

4. Whether the Hospital and David invaded William's privacy.

5. Whether the Hospital and David committed the tort of intentional infliction of emotional distress.

6. Whether the Hospital and David are liable to Vicki for her loss of consortium.

7. Whether the Watters are liable to David on David's counterclaims.

## FACTS

Vicki Watters and David were divorced in December of 1984, and Vicki was awarded custody of their three children. Vicki married William approximately two years later while she was involved in a bitter custody dispute with David. At the custody modification hearing held January 12, 1987, Vicki announced that she had married William.

David then contacted at least two of William's former wives and learned that William's had pled guilty to molesting a former stepdaughter, that he had once attempted suicide and that he had voluntarily sought counseling at the Hospital following his suicide attempt. David met with Thomas Barnes, an attorney, to discuss the procedure for obtaining William's medical records at the Hospital. In David's presence, Barnes telephoned the Hospital and spoke with an unidentified employee who told Barnes that a

1. We heard oral argument in Indianapolis on February 3, 1994.

subpoena was required to obtain medical records.

In anticipation of representing David, Barnes prepared a subpoena duces tecum to the Hospital for the "complete medical file on William D. Watters ... for the years 1980 to present" and placed it in David's file. However, approximately a week later, David informed Barnes that he would not need his services and that he intended to proceed pro se. Barnes surrendered the file to David.

David, or someone acting on his behalf, served the subpoena duces tecum prepared by Barnes on the Hospital. The Hospital complied and notified David that William's records were available. David visited the Hospital and personally took possession of a copy of William's entire medical file at the Hospital.

David subsequently contacted Dr. James Davis, a court appointed psychiatrist in the custody modification case, and offered to supply William's records to Davis to aid in his evaluation of the parties. Dr. Davis received the records.

Over the same period of time, David and William were also involved in small claims litigation arising from a scuffle between the two outside of William's home and William's allegations that David was harassing him. During that litigation, David referred to William's mental condition in open court and in pleadings David filed. We will state additional facts in our discussion where applicable.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing the entry of a summary judgment, we consider the same issues and conduct the same inquiry as the trial court. *O'Donnell v. American Employers Insurance Co.* (1993), Ind.App., 622 N.E.2d 570, 572, *trans. denied.* Summary judgment is only appropriate where the moving party demonstrates by properly designated evidentiary matter that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). All evidence must be construed most favorably to the nonmoving party. *Oelling v.*

*Rao* (1992), Ind., 593 N.E.2d 189, 190. Once the moving party meets his burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Id.;* Ind.Trial Rule 56(E).

Even if the trial court does not believe the nonmoving party will be successful at trial, summary judgment should not be entered where material facts conflict or where conflicting inferences may be drawn from the facts. *Haase v. Brousseau* (1987), Ind.App., 514 N.E.2d 1291, 1292. Summary judgment should not be used as an abbreviated trial. *Brewster v. Rankins* (1992), Ind.App., 600 N.E.2d 154, 156. Rather, the purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *United Farm Bureau Mutual Insurance Co. v. Schult* (1992), Ind.App., 602 N.E.2d 173, 174.

Judge Milligan entered thorough and well-reasoned findings of fact and conclusions of law in support of his judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *See Keskin v. Munster Medical Research Foundation* (1991), Ind.App., 580 N.E.2d 354, 362; *Celina Mutual Insurance Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007, 1012. However, such findings offer this court valuable insight into the trial court's rationale for its judgment and facilitate appellate review. *See Strutz v. McNagny* (1990), Ind.App., 558 N.E.2d 1103, 1106, *trans. denied.*

### Issue One: Statutory Health Records Claims

#### A. Mental Health Records Statute

The Watters first claim that the Hospital's release of William's mental health records to David violated Indiana Code § 16–14–1.6–1 *et seq.*, the Rights of Persons Being Treated for Mental Illness or Developmental Disabilities statute ("mental health records statute"). The Watters argue that the 1987 version of the statute, which was in effect when the Hospital released William's records, applies to his suit against the Hospital

rather than the 1981 version in effect when he received treatment at the Hospital.

Section 1, subsections (a)(1)–(6) of the mental health records statute designate the exclusive list of providers subject to the statute. Subsection (a)(7) also extends the statute's coverage to "any other service provider, hospital clinic, program, agency or private practitioner if the person receiving mental health services or developmental training was admitted without that person's consent." In support of its motion for summary judgment, the Hospital submitted the affidavit of Lois Slemp, Vice President of Patient Services at the Hospital, in which Slemp averred that the Hospital did not qualify as any one of the service providers listed under Indiana Code § 16–14–1.6–1(a)(1)–(6). The Watters did not challenge or controvert Slemp's affidavit. The Hospital also relied upon William's deposition testimony in which he admitted that he sought treatment voluntarily at the Hospital in 1981.

Whether we apply the 1981 or 1987 version of the statute, the Hospital is not governed by the mental health records statute. With the exception of minor, nonmaterial changes, the 1981 version of Indiana Code § 16–14–1.6–1(a) is identical to the 1987 version. Thus, Slemp's affidavit and William's deposition testimony establish that under either version of the mental health records statute, the Hospital did not qualify as a service provider under subsections (1) through (6), or as "any other service provider" under subsection (7) that furnished mental health services without a person's consent.

When the party moving for summary judgment establishes a prima facie case, the burden shifts to the party opposing the motion to respond with evidence to establish a genuine issue of material fact. *See Keesling v. Baker & Daniels* (1991), Ind.App., 571 N.E.2d 562, 566, *trans. denied.* The Watters did not carry their burden on this issue but instead assumed that the mental health records statute applied to the Hospital. The undisputed evidence establishes that the statute did not apply to the Hospital under these circumstances. Thus, the trial court properly granted summary judgment for the Hospital on the Watters' claim under the mental

health records statute, Indiana Code § 16–14–1.6–1 *et seq.*

**B.  Access to Health Records Statute**

■  The 1987 version of the access to health records statute set forth a list of health care "providers" which were required to maintain the original health records of a patient and designated those persons or entities who may lawfully request and obtain a patient's "health records" from a provider. *See* IND.CODE § 16–4–8–1 *et seq.* (West 1987). According to the Watters, the Hospital is also subject to liability under this statute because the Hospital released health records of William in addition to his mental health records.

■  An examination of its language demonstrates that the Watters' claim under the access to health records statute must fail for two reasons. The statute defined "health records" as "written or printed information possessed by a provider concerning any diagnosis, treatment, or prognosis of the patient." I.C. § 16–4–8–1. This definition suggests that both mental health records and general health records are governed by the access to health records statute. However, while mental health records are imparted confidential status under the mental health records statute, Indiana Code § 16–14–1.6–8, neither those records nor general medical records are afforded the same protection under the access to health records statute.

■  Further, a patient whose rights are violated under the mental health records statute has a civil cause of action for money damages against the health care provider which allows a breach of the confidentiality of the patient's mental health records to occur. *See* IND.CODE § 16–14–1.6–10 (Burns Supp.1987). The access to health records statute, in contrast, does not create a civil action for the disclosure or release of any type of health records.

■  Statutory remedies unknown to the common law, and statutes which provide new and extraordinary remedies, must be strictly construed and applied only to those cases that fall within their express terms. *See Matter of S.L.* (1992), Ind.App., 599 N.E.2d

227, 230. Thus, even if we were to accept the Watters' assertion that the Hospital was negligent when it released William's records to David, the Watters have no cause of action against the Hospital under the access to health records statute absent an express remedy provided by that statute. We conclude that summary judgment was properly entered for the Hospital on the Watters' claim under the access to health records statute.

Persons with mental health concerns should be encouraged to seek care and treatment with the expectation that their decision to do so shall remain confidential. However, the law as it stood in 1987 did not afford patients such as William, who sought treatment at mental health facilities like the Hospital, a remedy against a hospital for the unauthorized disclosure of that patient's mental health records. Thus, we are obliged to hold that the Watters did not have a claim against the Hospital under the 1987 version of either health records statute.[2]

### Issue Two: Physician–Patient Privilege

■ The Watters next contend that the Hospital had a duty to assert the physician-patient privilege on William's behalf and to refuse to release his mental health records when it was served with David's subpoena duces tecum. The physician-patient privilege is a creation of our legislature and codified at Indiana Code § 34–1–14–5(3):

"Except as otherwise provided by statute, the following persons shall not be competent witnesses:

. . . .

(3) Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

Watters cites both *Terre Haute Regional Hospital, Inc. v. Trueblood* (1992), Ind., 600 N.E.2d 1358 and *State v. Jaggers* (1987), Ind.App., 506 N.E.2d 832, *trans. denied,* for the proposition that the Hospital was required to invoke the privilege for his benefit.

Both *Trueblood* and *Jaggers* are inapposite. The hospital in *Trueblood* did refuse to honor a request for production of nonparty medical records on the grounds that those records were privileged and confidential. *Trueblood,* 600 N.E.2d at 1359. However, our supreme court did not hold that the hospital had an affirmative duty to invoke the nonparty patients' privilege. Instead, the court held that a nonparty patient's medical records are discoverable, even absent the patient's waiver of his privilege, where adequate safeguards exist to protect the patient's identity and confidentiality. *Id.* at 1362.

Similarly, in *Jaggers* we held that a chiropractor had "not only the right but the duty" to assert the physician-patient privilege on behalf of his patients. *Jaggers,* 506 N.E.2d at 835. We noted that the term "physician" in Indiana Code § 34–1–14–5 includes chiropractors. *Id.* at 833. However, this court did not hold in *Jaggers* that a private hospital met the definition of a physician and would be required to invoke the privilege on behalf of the hospital's patients.

■■ The physician-patient privilege is statutory and must be strictly construed. *Trueblood,* 600 N.E.2d at 1360. The physician-patient privilege does not apply to hospitals but only applies to "physicians" licensed to practice medicine. *See Collins v. Bair* (1971), 256 Ind. 230, 234 n. 1, 268 N.E.2d 95, 97 n. 1 (citing *Dean v. State* (1954), 233 Ind. 25, 31, 116 N.E.2d 503, 506 (practice of chiropractic is practice of medicine as defined in medical licensing statute)).[3] Here, the Hos-

---

2. Following several amendments and revisions of both statutes, our Legislature has once again changed the law regarding the release of mental health records. *See* IND.CODE § 16–39–1–1 *et seq.* Those "providers" governed by this new statute are now set forth in Indiana Code § 16–18–2–295. We express no opinion whether a provider such as the Hospital here would be subject to liability under the new version of the mental health records statute.

3. Even if we were to extend the definition of "physician" to include private hospitals such as the Hospital, information contained in patient records is not a "matter communicated to [the hospital], as such, by patients." Thus, the Hospital again would have no duty to invoke the physician-patient privilege as merely the custodian of William's records.

The Hospital's role in this controversy is analogous to a third party who is present and overhears a privileged communication between a pa-

pital could have, but was not required to, challenge or question David's discovery request. See *Trueblood*, 600 N.E.2d at 1359–60; *c.f. In re Estate of Beck v. Campbell* (1968), 143 Ind.App. 291, 297, 240 N.E.2d 88, 92, *trans. denied* (privilege is personal to patient and can only be exercised by patient or by those legally representing him). Thus, we conclude that the trial court properly granted summary judgment for the Hospital on the Watters' claim for breach of the physician-patient privilege.

### Issue Three: Abuse of Process

We next address the Watters' assertion that David's conduct in serving a subpoena duces tecum without an accompanying request for production of documents constitutes an abuse of process. The tort of abuse of process is comprised of two elements: (1) ulterior motive and (2) use of process that would not be proper in the normal prosecution of the case. *Archem, Inc. v. Simo* (1990), Ind.App., 549 N.E.2d 1054, 1061, *trans. denied, cert. dismissed*, 498 U.S. 1076, 111 S.Ct. 944, 112 L.Ed.2d 1032. In other words, for an abuse of process, we must find that David misused or misapplied process for an end other than that for which it was designed to accomplish. *See id.*

Without considering David's intent or motive, we conclude that the Watters' claim fails on the second element of the tort of abuse of process. David claims that, after learning that his former wife had married William and that William had been convicted for molesting a former stepchild, he sought William's mental health records to confirm his suspicions that William was a threat to his children. Therefore, according to David, he needed William's records because his children's home environment was at issue in the custody modification hearing.

There is no doubt that William's mental condition was relevant and that the information contained in William's mental health records was ultimately discoverable and admissible at the custody modification hearing. The mental health of the custodial parent's spouse is relevant for discovery purposes in a custody modification determination. *Bishop v. Goins* (1992), Ind.App., 586 N.E.2d 905, 907; *see* IND.CODE § 31–1–11.5–21(a)(6) (mental and physical health of all individuals involved is relevant factor in custody determination). Whether a custody modification is warranted includes all relevant factors, including changes in the circumstances of both the custodial and noncustodial parent and the effect of those changes on the child, as judged in the context of the whole environment. *See Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 99. Further, the trial court is authorized to order an investigation and consult any person who may have information about the potential child custody arrangements. IND.CODE § 31–1–11.5–22(b). The ultimate purpose or end for David's request was legitimate in the normal prosecution of a custody modification. Thus, David's conduct in serving the subpoena duces tecum does not satisfy the second element of the tort of abuse of process.

However, by disregarding the rules which govern the conduct of litigation in our trial courts, David abused the discovery process and was subject to sanctions in the trial court. Under our Trial Rules, the proper procedure for requesting documents from a nonparty is to serve the request upon all other parties and to include the request in or with a subpoena served upon the nonparty. Ind. Trial Rule 34(C). The request shall state that:

"the witness or person to whom it is directed is entitled to security against damages or payment of damages resulting from such request and may respond to such request by submitting to its terms, by proposing different terms, by objecting

tient and physician. This court has previously held that the physician-patient privilege does not extend to such third parties unless that party was necessary to the purpose of transmitting the information to the physician. *See In the Matter of C.P.* (1989), Ind.App., 543 N.E.2d 410, 411–12, *affirmed*, (1990), Ind., 563 N.E.2d 1275 (communication to social worker not privileged); *General*

*Accident, Fire & Life Assurance Co. v. Tibbs* (1936), 102 Ind.App. 262, 269, 2 N.E.2d 229, 232 (communication to nurse not privileged). Here, we agree with the reasoning in both *Matter of C.P.* and *Tibbs* that any extension of the statutory physician-patient privilege to third parties must come from the Legislature.

specifically or generally to the request . . ., or by moving to quash as permitted by Rule 45(B)."

*Id.*

The subpoena duces tecum David served upon the Hospital as the custodian of William's mental health records did not comply with the requirements of Trial Rule 34(C) and Trial Rule 45(B). If David had complied with Trial Rule 34 and served his request for William's records upon Vicki as a party, then William would have received notice of David's request. The Watters could have objected to David's request, objected to the Hospital's release of William's records, and then utilized the full range of protective measures available to a nonparty under Trial Rule 34(C) and Trial Rule 45(B), including requesting a protective order from the court on the ground of privilege or other grounds.

Even as a pro se litigant, David is bound by the requirements of our Trial Rules. *See Foster v. Adoption of Federspiel* (1990), Ind.App., 560 N.E.2d 691, 692. The normal recourse against a party who abuses the discovery process is to seek sanctions in the trial court. *See Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 814, *trans. denied.* The trial court has discretion to impose sanctions under appropriate circumstances. *Id.* When discovery breaks down or the court determines that the discovery process has been abused, the court may, in its discretion, impose various sanctions including, but not limited to, an award of costs and attorney fees, the exclusion of evidence obtained through misuse of the discovery process, or the entry of dismissal or judgment by default. *See JKL Components Corp. v. Insul–Reps, Inc.* (1992), Ind.App., 596 N.E.2d 945, 955, *trans. denied; Pitts v. Johnson County Department of Public Welfare* (1986), Ind.App., 491 N.E.2d 1013, 1015; *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 1009, *trans. denied.*

This court will not tolerate, nor should our trial courts tolerate, violations of the Trial Rules which deprive nonparties of the opportunity to invoke the protection which the rules provide when the discovery of privileged information is sought. Under such circumstances, the trial court protects the nonparty patient's privilege by prescribing safeguards which will ensure the patient's confidentiality. *See Trueblood,* 600 N.E.2d at 1361 (citing *Rudnick v. Superior Court of Kern Co.,* 11 Cal.3d 924, 114 Cal.Rptr. 603, 523 P.2d 643). Our conclusion that the information contained in William's mental health records was ultimately relevant, discoverable and admissible in the custody modification proceeding should not be construed to diminish William's right under the Trial Rules (1) to have the trial court first make that determination and (2) to seek appropriate restrictions from the trial court on the use and dissemination of that information. Our supreme court has aptly described the importance of complying with the Trial Rules as follows:

" 'If the failure to obey the clear explicit dictates of the Indiana Rules of Procedure can be simply dismissed as harmless error, then, the erosion of an orderly judicial system has begun.' "

*Otte v. Tessman* (1981), Ind., 426 N.E.2d 660, 662 (quoting *Otte v. Tessman* (1980), Ind. App., 412 N.E.2d 1223, 1232 (Staton, J., dissenting)). David did not comply with the applicable Trial Rules.

However, the remedy of sanctions was only available to the Watters in the dissolution court. In other words, the Watters have no recourse to sanctions in the present case. The trial court could not and we cannot grant them that relief. Therefore, while David's actions were sanctionable, we conclude that his failure to comply with the Trial Rules does not in itself constitute a tortious abuse of process. As we noted above, the purpose of David's discovery request was legitimate in the normal prosecution of a custody modification proceeding. The trial court properly entered summary judgment for David on the Watters' abuse of process claim.[4]

---

4. We are uncertain whether the Watters are also claiming that the trial court erred in entering summary judgment for the Hospital on the abuse of process count. Lest there be any doubt, the Watters cannot sustain an abuse of process claim against the Hospital because the Hospital did not

### Issue Four: Invasion of Privacy

The Watters next assert that the Hospital and David invaded William's right to privacy. Indiana recognizes four separate forms of the tort of invasion of privacy: (1) appropriation; (2) intrusion; (3) public disclosure of private facts; and (4) false light in the public eye. *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27, 31; *see also Continental Optical Co. v. Reed* (1949), 119 Ind.App. 643, 648, 86 N.E.2d 306, 308, *trans denied.* Specifically, the Watters argue that when the Hospital released William's mental health records to David and David then used those records, the invasion of William's privacy took the forms of "intrusion" and "public disclosure of private facts."

### A. Intrusion

Invasion of privacy by intrusion consists of an intrusion upon the plaintiff's physical solitude or seclusion, either as to his person or to his private affairs or concerns. *Cullison,* 570 N.E.2d at 31; *Prosser and Keeton on Torts* § 117, at 854 (5th ed. 1984). To constitute tortious conduct, the intrusion must be something which would be offensive or objectionable to a reasonable person. *Prosser and Keeton,* § 117 at 855. In determining whether an intrusion into private information is actionable, we consider whether the means used is abnormal and the defendant's purpose for obtaining the information. *Id.* § 117, at 856.

The Hospital did not intrude into William's private affairs or concerns but merely complied with what appeared on its face to be an otherwise valid subpoena duces tecum to produce records in a civil suit. The Watters have no claim for intrusion against the Hospital.

While David's conduct in violating the Trial Rules and obtaining William's mental health records could well be offensive or objectionable to a reasonable person, David's purpose for intruding was legitimate. *See* Issue Three. David obtained William's mental health records because those records were

serve the subpoena which was purportedly abused. Summary judgment for the Hospital

relevant to his children's welfare in the Watters' home. The trial court could have ordered William to produce his records under a protective order, even though those records are privileged. *See Terre Haute Regional Hospital, Inc. v. Trueblood* (1992), Ind., 600 N.E.2d 1358, 1362 (with adequate safeguards, privileged nonparty patient medical records are discoverable). The Watters have no claim against David for intrusion.

### B. Public Disclosure of Private Facts

Based upon our review of prior Indiana decisions and other authorities, three essential elements of invasion of privacy by public disclosure of private facts emerge: (1) information is divulged to one who had no legitimate interest in the information; (2) in a manner that was coercive and oppressive; and (3) which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. *Kaletha v. Bortz Elevator Co.* (1978), 178 Ind.App. 654, 658, 383 N.E.2d 1071, 1074, *overruled on other grounds by Burks v. Rushmore* (1989), Ind., 534 N.E.2d 1101, 1104; *Patton v. Jacobs* (1948), 118 Ind. App. 358, 365, 78 N.E.2d 789, 791, *trans. denied; Prosser and Keeton,* § 117, at 856–57.

The Watters' claim against the Hospital must fail because the Hospital did not publicly disclose private facts. The Hospital released William's records only to David under the compulsion of a subpoena duces tecum. David had a legitimate interest in the information contained in those records. *See* Issue Three. Summary judgment for the Hospital was therefore appropriate on the Watters' invasion of privacy count.

However, the trial court also entered summary judgment for David on the Watters' allegation of public disclosure of private facts. David filed a motion for summary judgment and brief in support of his motion, but neither in his motion nor his brief did he specifically move for summary judgment on the Watters' invasion of privacy claim. The trial court nevertheless granted David summary judgment on this claim, and we must

was likewise proper.

conclude that summary judgment for David on this issue was erroneous.

The party seeking summary judgment bears the burden of establishing the propriety of the motion. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1982), Ind., 446 N.E.2d 1310, 1313. It is only when the moving party has established a prima facie lack of any genuine issue of material fact that the non-movant must then respond and set forth specific facts establishing the existence of a genuine issue in dispute. *See Keesling v. Baker & Daniels* (1991), Ind.App., 571 N.E.2d 562, 566, *trans. denied.* We apply the same standard as the trial court and only review those portions of the record which were specifically designated to the trial court. *See* Ind. Trial Rule 56(C); *City of Evansville v. Moore* (1990), Ind., 563 N.E.2d 113, 114; *Inland Steel v. Pequignot* (1993), Ind.App., 608 N.E.2d 1378, 1381, *trans. denied.*

Here, David moved for summary judgment on four of the Watters' claims: (1) abuse of process; (2) intentional infliction of emotional distress; (3) defamation; and (4) loss of consortium. Record at 288, 294, 296, and 298. Before this appeal, David had not designated any evidence as required by Trial Rule 56(C) to support the trial court's entry of summary judgment on the invasion of privacy claim.[5] David has, therefore, provided us with nothing to review in support of the summary judgment entered for him on this issue. Thus, summary judgment for David, on the Watters' claim of invasion of privacy by public disclosure of private facts, was inappropriate.

Further, even though the trial court correctly granted summary judgment for the Hospital on this issue, that same result is not required for the claim against David. In opposition to David's motion, the Watters designated, among other materials, David's deposition and two pleadings filed by David in small claims proceedings between David and William. Record at 355–56. In the brief in support of their response, the Watters then referred to specific pages in David's deposition. When asked in his deposition whether he had discussed the contents of William's mental health records with anyone other than the court-appointed psychiatrist, David replied "I have suggested to the courts that Mr. Watters has a disturbed mental history." Record at 759. David did not deny that he had referred to William as being diagnosed as "obsessive compulsive," and David stated that he gained that information either from William's previous wives or from his medical records. Record at 768. David then admitted: (1) that a diagnosis of William as obsessive compulsive was contained in William's records from the Hospital; (2) that he had no medical or psychiatric training; and (3) that he "probably referenced the fact in some pleadings that he [William] has been hospitalized." Record at 773, 774–75 and 776.

In his deposition, David read and acknowledged that he filed a pleading in a small claims action between him and William in which he alleged that William was obsessive compulsive. Record at 769–70, 872 (Deposition Exhibit 2). David also filed another pleading in the small claims action which mentioned William's diagnosis as obsessive compulsive. Record at 408 (Exhibit 22 to Watters' Response to David's Motion for Summary Judgment).

As the above designated materials show, David filed pleadings referring to William's diagnosis as obsessive compulsive in small claims litigation unrelated to the custody case. Statements made in the course of judicial proceedings are absolutely privileged unless such statements are not relevant and pertinent to the litigation or do not bear some relation thereto. *Curry v. Orwig* (1981), Ind.App., 429 N.E.2d 268, 272, *trans. denied; Stahl v. Kincade* (1963), 135 Ind.App. 699, 707, 192 N.E.2d 493, 497, *trans. denied.* To be privileged, the statement "must be legitimately related [to the litigation], or so pertinent to the subject of the controversy that it may become the sub-

---

**5.** Dinn did make a passing reference to the invasion of privacy issue at a hearing on his and the Hospital's motions for summary judgment. Record at 1374–75. Dinn's argument at that hear-

ing is insufficient to make a prima facie case for summary judgement on the Watters' invasion of privacy count.

ject of inquiry in the course of trial." *Briggs v. Clinton County Bank & Trust Co.* (1983), Ind.App., 452 N.E.2d 989, 997, *trans. denied* (quoting 50 Am.Jur.2d *Libel & Slander* § 239). Whether a particular statement is relevant and pertinent to the litigation is purely a legal determination for the court. *Id.*

There is no question that William's 1981 diagnosis and treatment following a suicide attempt was neither relevant nor pertinent to the small claims litigation between William and David. Thus, a genuine issue of material fact exists concerning whether David publicly divulged William's mental health history. Similar fact questions remain as to whether David's pleadings were coercive or oppressive and whether having such information divulged in a public forum would be highly offensive and objectionable to a reasonable person of ordinary sensibilities. Summary judgment was therefore precluded on the Watters' invasion of privacy claim against David for public disclosure of private facts.

### Issue Five: Intentional Infliction of Emotional Distress

The Watters next claim that David's use of William's mental health records constituted an intentional infliction of emotional distress. In *Cullison v. Medley* (1991), Ind., 570 N.E.2d 27, our supreme court adopted the tort of intentional infliction of emotional distress as follows: " 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.' " *Id.* at 31 (quoting *Restatement (Second) of Torts* § 46 (1965)). The intent to harm one emotionally forms the basis for this tort. *Id.*

We cannot say from the evidence that the Hospital, having complied with what it reasonably believed to be a valid subpoena duces tecum, intended to harm William when it released his mental health records to David. Summary judgment for the Hospital on this claim is warranted.

However, issues of material fact remain for resolution by the trier of fact on the Watters' claim against David for intentional infliction of emotional distress. Despite

David's contention that he obtained William's records solely to protect his children, the undisputed evidence discloses that David referred to William's mental condition in litigation unrelated to David's custody dispute with Vicki. William's mental health was irrelevant in these other court proceedings. *See* Issue Four. Considered together with the evidence of animosity between David and William, we conclude that a genuine issue of material fact exists concerning David's intent to harm William emotionally. Summary judgment for David on the Watters' emotional distress claim was error.

### Issue Six: Loss of Consortium

Vicki also brought a claim for loss of consortium which she asserted resulted from William's injuries and their subsequent estrangement. Loss of consortium is derivative in nature and its viability depends upon the validity of the injured spouse's claim. *Nelson v. Denkins* (1992), Ind.App., 598 N.E.2d 558, 563. Recovery for loss of consortium is not precluded by every bar to the injured spouse's suit. *Board of Commissioners v. Nevitt* (1983), Ind.App., 448 N.E.2d 333, 340, *trans. denied.* Rather, a loss of consortium claim is barred only where the contested injuries were not caused by any tortious conduct of the defendant, the injured spouse's cause of action is abrogated or there has been an adjudication of nonliability on the merits. *Id.* at 341.

Here, we again conclude that summary judgment was appropriate for the Hospital because the Hospital has not been shown to have committed any tortious conduct against William. However, issues of material fact remain on William's claim against David for invasion of privacy and for intentional infliction of emotional distress. *See* Issues Four and Five. Vicki's loss of consortium claim is viable as long as William's tort claims against David remains viable. Thus, the trial court erred when it entered summary judgment for David on Vicki's loss of consortium claim.

### Issue Seven: David's Counterclaims

David, proceeding pro se, filed four counterclaims against the Watters in which he

sought compensatory and punitive damages and alleged: (1) malicious denial of the parent-child relationship; (2) libel and/or slander; (3) filing of a frivolous action; (4) invasion of privacy. David later moved for summary judgment on all counts although he subsequently attempted to withdraw the motion. Pursuant to Trial Rule 56(B), the trial court ruled on David's motion and granted summary judgment for the Watters on each of David's counterclaims.[6]

We first note that David attached several items as exhibits in support of his motion and that these materials are either irrelevant to his claims or are not evidentiary materials which may properly be designated in support of a motion for summary judgment. *See* Ind. Trial Rule 56(C). The Watters, in contrast, designated proper evidentiary materials, including affidavits, in opposition to David's claim for malicious denial of parent-child relationship. Our discussion and resolution of this appeal also establishes that, regardless of the ultimate outcome, the Watters' complaint is not frivolous. *See Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, 170, *affirmed and adopted*, (1989), Ind., 543 N.E.2d 627, 629 (claim is "frivolous" if taken primarily for purpose of harassing or maliciously injuring person). The Watters' evidentiary materials are sufficient to carry their burden under Trial Rule 56(C), and the trial court did not err when it granted them summary judgment on David's counterclaims for malicious denial of parent-child relationship and for filing a frivolous appeal.

However, the Watters did not designate evidence which warranted summary judgment in their favor on David's remaining counterclaims. Their designated evidence is sufficient to withstand David's motion for summary judgment by showing the existence of disputed questions of material fact. However, that same evidence is insufficient to show they are entitled to judgment on those counterclaims as a matter of law. Thus, the

trial court erred by entering summary judgment for the Watters on David's libel/slander and invasion of privacy counterclaims.

## CONCLUSION

We affirm the grant of summary judgment for the Hospital on all counts. With respect to the Watters' claims against David, we affirm summary judgment on the counts for abuse of process and invasion of privacy by intrusion. Genuine issues of fact remain on the claims for invasion of privacy by public disclosure of private facts, intentional infliction of emotional distress and loss of consortium. We reverse and remand the entry of summary judgment for David on those counts. Summary judgment for the Watters on David's counterclaims for malicious denial of parent-child relationship and for filing a frivolous appeal is affirmed. We reverse and remand on David's counterclaims for libel/slander and invasion of privacy.

The judgment is affirmed in part, and reversed and remanded in part.

BAKER and CHEZEM, JJ., concur.

---

6. Trial Rule 56(B) provides:
    "(B) **For Defending Party—When Motion Not Required.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. When any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party."