Larry CONWELL, Appellant–Plaintiff,

v.

John D. BEATTY, Sheriff of Howard County, Howard County Sheriff's Department and County of Howard, Tammy Cappoli, and the Fleet Supply Incorporated, Doing Business as Big R Stores, Appellees–Defendants.

No. 34A02–9412–CV–781.

Court of Appeals of Indiana.

June 21, 1996.

Rehearing Denied Aug. 19, 1996.

Caroline B. Briggs, Flora, for Appellant.

George E. Purdy, William C. Ahrbecker, Bose McKinney & Evans, Thomas R Schultz, Locke Reynolds Boyd & Weisell, Indianapolis, for John D. Beatty, Sheriff of Howard County, Howard County Sheriff's Department and County of Howard.

Daniel J. Gamble, Ellis, Gamble & Nolan, Kokomo, Dane L. Tubergen, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for Tammy Cappoli and The Fleet Supply, Incorporated, Doing Business as Big R Stores.

## OPINION

KIRSCH, Judge.

Appellant-plaintiff Larry Conwell appeals the trial court's entry of summary judgment against him in two lawsuits he filed for defamation and various other counts. The overall issue for review is whether a genuine issue of material fact exists to preclude summary judgment on Conwell's claims.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Larry Conwell was a deputy sheriff with the Howard County Sheriff's Department. On August 3, 1990, while dressed in his deputy sheriff uniform, Conwell entered a Big R store operated by Fleet Supply Incorporated in Kokomo, Indiana. Tammy Cappoli was working as a merchandiser at the same store. Cappoli recognized Conwell as the same person she thought had switched a price tag from one item to a more expensive item on an earlier occasion at a K–Mart store where Cappoli was employed.

Upon recognizing Conwell, Cappoli telephoned security and told Big R employee Robin Johanning to watch Conwell because he was a "price switcher." *Cappoli Record* at 40. Johanning turned one of the security cameras on Conwell and videotaped him moving throughout the store. She saw Conwell proceed to the agricultural department and stand by some couplers. She telephoned another Big R employee, Thad Edmonds, and told him that she thought Conwell was a price switcher. Johanning asked Edmonds to follow Conwell through the aisles and watch his hands. Edmonds located Conwell near the hydraulic hoses. Johanning observed Conwell pick up a hydraulic hose and "mess with" the box. *Cappoli Record* at 43. It appeared as if Conwell was trying to scrape the price tag off of the box. Johanning called Edmonds to ascertain the price of the hose.

By the time Edmonds obtained the price, Conwell had already made his purchase and left the store. Upon examining the cash register tape, it was determined that Conwell had purchased an 84–inch hydraulic hose, SKU number 571–196, with a price tag for a lock coupler, SKU number 631–081. The hydraulic hose normally sold for $12.59, but with the lock coupler price tag, Conwell bought it for $8.49.

Johanning reported the incident to William S. Alverson, a member of security personnel for Fleet Supply Incorporated. Alverson reviewed the video tape Johanning made of Conwell. Alverson also inspected the merchandise in the area where the incident was to have occurred. He discovered that all of the 84–inch hydraulic hoses remaining on the shelf contained the correct price tag. Edmonds told Alverson that a coupler was found on the shelf below its original shelf and the price tag was missing. Alverson then reported the incident to the Howard County Sheriff's Department.

Detective Rich Ferguson responded to Alverson's call. Ferguson went to the Big R store where he viewed the video tape. Upon doing so, Ferguson advised Alverson that the video tape did not contain enough evidence to warrant filing criminal charges because the tape did not show the item being remarked. Ferguson nonetheless requested a copy of the video tape because the department considered the matter a complaint and would investigate further. Alverson sought and obtained approval from the head security officer to continue the case. Alverson told Ferguson that his superiors wanted to pursue criminal charges against Conwell.

Steven R. Rogers, an investigator with the Sheriff's Department, was assigned to investigate the incident. Rogers talked with the Big R employees involved and obtained a copy of Johanning's video tape of Conwell. Following his investigation, Rogers turned the case over to prosecuting officials. Rogers swore out a probable cause affidavit in which he detailed his investigation and identified the materials he received during the course of his investigation: two reports prepared by the sheriff's department; Tammy Cappoli's statement; Thad Edmonds' statement; Big R's security report; and the video tape.

The prosecuting attorney filed charging informations against Conwell for theft and official misconduct. In conjunction with the informations, the prosecutor also submitted Rogers' probable cause affidavit and Johanning's video tape · to the Howard Circuit Court. The court issued a warrant for Conwell's arrest on both charges and a warrant to search Conwell's residence.

On August 7, 1990, Conwell was arrested at his home by seven officers of the Howard County Sheriff's Department pursuant to the arrest warrant issued by the court earlier that day. The officers also executed the warrant to search Conwell's residence where

they discovered a piece of hydraulic hose, the carton which the hose came in, the cash register slip of the transaction, and the Big R bag in which the hose was placed. There were two price tags on the hose carton, one placed over the other. The top tag bore a price of $8.49 and a SKU number of 631–801, the same as the price and SKU number of a coupler like the one discovered without a price tag on the Big R shelf.

Following Conwell's arrest and the search of his residence, appellee-defendant, Sheriff J.D. Beatty, called an "impromptu" press conference at the Sheriff's Department. *Beatty Record* at 76. Beatty told the press that Conwell had been arrested pursuant to warrants for theft and official misconduct. Beatty also relayed the details provided to the court in support of the arrest and search warrants. Beatty told the press that on a prior occasion, Conwell had been involved in a price switching incident at a local K–Mart.

Conwell subsequently attempted to retire from the sheriff's department. Sheriff Beatty refused to assist Conwell with the necessary paperwork to obtain Conwell's pension. Legal counsel advised Beatty that Beatty had no authority to deny Conwell's retirement request, and on August 30, 1990, the Howard County Sheriff's Department Merit Board accepted Conwell's resignation and retirement.

Conwell went to trial on the criminal charges, and a jury found him not guilty. Following his acquittal, Conwell filed the lawsuits underlying the present appeal. He sued Tammy Cappoli and Fleet Supply Incorporated, doing business as Big R stores, on theories of malicious prosecution, defamation, intentional infliction of emotional distress, and negligence and/or gross negligence.

In a separate action, Conwell sued Sheriff Beatty, the Howard County Sheriff's Department, and Howard County. Conwell claimed these defendants were answerable for defamation, false arrest, intentional infliction of emotional distress, and for violating Conwell's constitutional liberty interest in his good name and reputation, including his "employability," giving rise to an action under 42 U.S.C. § 1983.

All the defendants in both actions moved for summary judgment. The trial court granted the respective motions without stating the basis for its judgment. Conwell initially appealed each case separately. This court granted Conwell's subsequent motion to consolidate the appeals.

## DISCUSSION AND DECISION

### STANDARD OF REVIEW

When reviewing a decision on a summary judgment motion, this court applies the same standard as the trial court. *Wickey v. Sparks,* 642 N.E.2d 262, 265 (Ind.Ct.App. 1994), *trans. denied* (1995). Summary judgment shall be granted if the designated evidentiary matter demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Wickey,* 642 N.E.2d at 265. All facts and reasonable inferences must be construed against the moving party. *Sizemore v. Arnold,* 647 N.E.2d 697, 699 (Ind.Ct.App.1995). We will affirm a summary judgment ruling on any legal theory which is consistent with the designated evidence in the record. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 142 (Ind. Ct.App.1995), *trans. denied* (1996).

### CLAIMS AGAINST HOWARD COUNTY DEFENDANTS

#### I. Defamation

Conwell's defamation claim against Beatty and the Howard County defendants is based on statements Beatty made to the local newspaper in connection with the Sheriff's Department's investigation of the Big R incident. In his affidavit designated to the trial court, Conwell asserted:

"50. That following my arrest, a newspaper article appeared in the Kokomo Tribune which stated:

'About three years ago, Conwell was involved in price switching at a Kokomo K mart store, Beatty said. An employee alerted the managers to what Conwell was doing. However, the managers of the store did not press charges and al-

lowed Conwell to pay full price for the items, Beatty said. 'He was in uniform at that time too,' Beatty noted.'

which statements were attributed to Sheriff Beatty."

*Beatty Record* at 155. Also designated to the trial court was Beatty's affidavit in which he averred:

"10. ... [O]n August 7, 1990, I called an impromptu press conference in the conference room of the Howard County Sheriff's Department in the Howard County Courthouse. I call [sic] the press conference in anticipation of requests from the media for information concerning Conwell's arrest. At this press conference, I stated to members of the press that officers of the Howard County Sheriff's Department had arrested Deputy Larry L. Conwell on warrants for the criminal charges of Theft and Official Misconduct. I provided the information provided to Judge Brubaker as probable cause for the arrest and search warrants issued earlier in the day. I carefully and expressly limited my statement to the assembled representatives of the media at this press conference to information provided to me as the result of the investigation."

*Beatty Record* at 76.

The record does not contain a copy of the newspaper article.[1] Nonetheless, Beatty asserted in his affidavit that he expressly limited his statements to the media to information he received from others. Conwell does not dispute this assertion, and, in fact, agreed in oral argument that Beatty's statement to the press was a reiteration of what others told Beatty during the course of the investigation. According to Conwell, however, an issue of material fact exists over whether the K–Mart incident ever occurred.

■ A fact is material if it is dispositive of the litigation. *See Sizemore*, 647 N.E.2d at 699. Here, whether the K–Mart incident occurred is not dispositive of the litigation. Sheriff Beatty, in his role as chief law enforcement officer of Howard County, relayed

to the public the facts surrounding the arrest of one of his deputies earlier that day. He told the public the facts which supported the arrest warrant issued by the Howard Circuit Court and the nature of the charges resulting in Conwell's arrest.

■ At the time Sheriff Beatty made the representations, the Howard Circuit Court had issued an arrest warrant based, in part, upon an allegation that Conwell had previously been involved in a price switching incident at K–Mart. The truthfulness of this statement defeats Conwell's defamation claim as a matter of law because "[t]he United States Constitution requires a false statement of fact in order to impose liability for defamation." *Heeb v. Smith,* 613 N.E.2d 416, 420 (Ind.Ct.App.1993), *trans. denied.* Sheriff Beatty spoke the truth when he stated that the arrest warrant for the charges surrounding the Big R incident was based in part on Conwell's involvement in a price switching incident on a prior occasion. There was no false statement, and, consequently, no defamation. Whether falsities were later discovered as to those facts is immaterial; at the time Beatty made the statement, he accurately reported the status of the investigation.

Conwell asserts that even if Beatty was merely reiterating the facts used to obtain the arrest warrant, Beatty had a duty to investigate whether the K–Mart incident occurred and was reckless for not doing so. This assertion fails for two reasons. First, Beatty's recklessness is relevant for determining whether he had actual malice in making the statements. *See New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964) (public official bringing defamation claim must prove actual malice). *See also Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 679, 321 N.E.2d 580, 586 (1974) (adopting standard that defamatory falsehood must be "published with knowledge of its falsity or with reckless disregard of whether it was false."), *trans. de-*

---

1. The absence of the newspaper article creates a compound hearsay problem. The statements at issue were presented through Conwell's assertions of what the newspaper reported about what Beatty said. We need not address the issue, however, because none of the parties objected to the admissibility of the statements or otherwise claim any error on appeal.

*nied, cert. denied,* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976). Actual malice is an element of Conwell's defamation claim because Conwell was a public official when the statements were made. Because we have already determined that no defamation occurred when Beatty stated the truth, there is no need to inquire into actual malice. Second, any duty Beatty owed Conwell would be relevant only to determine whether Beatty was somehow negligent toward Conwell. *See Crist v. K–Mart Corp.,* 653 N.E.2d at 146 (negligence consists of duty, breach, and injury). Conwell did not sue Beatty for negligence, thereby obviating the need for a duty analysis.

There being no genuine issues of material fact, the Howard County defendants were entitled to judgment as a matter of law on Conwell's defamation claim. There being no defamatory statement, we do not reach the Howard County defendants' defenses of absolute privilege, qualified privilege or immunity.

## II. False Arrest

Conwell claims that he was subjected to false arrest by the actions of the Howard County defendants. Conwell emphasizes the fact that Beatty himself, accompanied by seven other police officers, served the arrest warrant, executed the search warrant and took Conwell into custody. Conwell claims this was not typical departmental procedure, and that it amounted to "unusual process." According to Conwell, a material issue of fact exists on his false arrest claim based upon this court's decision in *Edwards v. Vermillion County Hosp.,* 576 N.E.2d 1285 (Ind.Ct. App.1991). That case, however, was vacated on rehearing in which summary judgment in favor of the defendants was affirmed on grounds of immunity. *Edwards v. Vermillion County Hosp.,* 579 N.E.2d 1347, (Ind.Ct. App.1991), *trans. denied* (1992).

■ The applicable law is more accurately stated as:

"[P]roof of the absence of probable cause is essential to the plaintiff's cause of action for false arrest.... Probable cause for arrest is demonstrated by facts and circumstances known to the arresting officer which would warrant a person of reason-

able caution and prudence in believing that the accused had committed or was committing a criminal offense. Thus, if the plaintiff in a false arrest action fails to demonstrate the absence of probable cause, or if the record as a whole reflects probable cause for the arrest, then the plaintiff's case must fail and the inquiry comes to a halt."

*Garrett v. City of Bloomington,* 478 N.E.2d 89, 93 (Ind.Ct.App.1985) (citations omitted), *trans. denied.*

■ When effectuating Conwell's arrest, the Sheriff's Department had an arrest warrant based upon a finding of probable cause issued by the Howard Circuit Court. This warrant and judicial finding of probable cause are grounds for a good faith, reasonable belief that there was probable cause to arrest Conwell. Moreover, the record contains other evidence of the existence of probable cause: the video tape showing Conwell shopping in the area where a price tag had been switched, the cash register tape showing that Conwell purchased an item for the price of a different item, the remaining items on the shelf all containing the correct price tag, and an item out of place on a different shelf and without a price tag. These facts would induce a person of reasonable caution and prudence to believe that Conwell had committed a crime, and, hence, they constituted probable cause. The fact that Conwell later presented evidence to call into question the validity of the K–Mart occurrence does not make the Howard County defendants liable for false arrest. *See id.* Similarly, the zeal with which Sheriff Beatty executed the arrest warrant, however ill-advised, does not mitigate against the judicial finding of probable cause. Summary judgment was properly entered against Conwell on his false arrest claim.

## III. Intentional Infliction of Emotional Distress

■ Conwell contends that the Howard County defendants' conduct amounted to an intentional infliction of emotional distress. An intentional infliction of emotional distress occurs when " 'one who by extreme and out-

rageous conduct intentionally or recklessly causes severe emotional distress to another...."" *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind.1991) (quoting Restatement (Second) of Torts § 46 (1965)).

■ The Howard County defendants argue that in order to recover for intentional infliction of emotional distress, Conwell must prove a "host tort." The Howard County defendants cite *Rambo v. Cohen,* 587 N.E.2d 140, 146–47 n. 10 (Ind.Ct.App.1992), *trans. denied,* in which this court stated that:

"[A]lthough the impact rule no longer exists for intentional torts, Indiana still requires a predicate tort, such as defamation, before a plaintiff can recover for emotional distress, and if a defamation plaintiff cannot prove the elements of either *per se* or *per quod* defamation, there can be no recovery for emotional distress."

The host tort requirement is a concept that arose out of a damages principle once recognized in Indiana as the impact rule. The impact rule provided that "damages for mental anguish are recoverable only when accompanied by and resulting from a physical injury." *Cullison v. Medley,* 559 N.E.2d 619, 621 (Ind.Ct.App.1990), *overruled on transfer,* 570 N.E.2d 27 (1991). The host tort requirement was embodied in an exception to the impact rule. This court explained the host tort requirement in the context of the exception as follows:

"An exception to [the impact] rule applies if the emotional distress is occasioned by 'certain tort actions involving the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance. False imprisonment and assault actions are examples of instances in which a disagreeable emotional experience would normally be expected to be inextricably intertwined with the nature of the deliberate wrong committed, thereby lending credence to a claim for mental disturbance. The conduct of the defendant in such circumstances is characterized as being willful, callous, or malicious, which may produce a variety of reactions, such as fright, shock, humiliation, insult, vexation, inconvenience, worry, or apprehension.'

"[*Charlie Stuart Oldsmobile, Inc. v. Smith,*] 171 Ind.App. [315,] 327, 357 N.E.2d [247,] 254 (citations omitted). This exception requires the tortious invasion of a legal right, i.e., the commission of a host tort. The host tort must be committed against, or directed to, the person who claims damages for the mental or emotional stress."

*Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1056 (Ind.Ct.App.1990).

In *Cullison,* this court was confronted with the impact rule and its exception in the context of a complaint alleging four counts: trespass, assault, invasion of privacy, and intentional infliction of emotional distress. The first three counts were pled as the type of invasion of a legal right required by the exception to the impact rule. The fourth count was pled as an independent cause of action. In accordance with ruling precedent, we held that Cullison was not entitled to recover for emotional distress because he satisfied neither the impact rule nor its exception. In addition, we rejected Cullison's request to recognize the tort of intentional infliction of emotional distress as a separate cause of action. 559 N.E.2d at 624 n. 2.

■ On transfer, our supreme court reversed, holding that the impact rule "does not apply to prohibit recovery for emotional distress when sustained in the course of a tortious trespass." 570 N.E.2d at 146. It was this language that led to our statement in *Rambo.*

But there is more to *Cullison.* In addition to the court's resolution of the impact rule issue, there was another holding in the *Cullison* case that resolves the host tort requirement debate. In Part IV of the opinion, the court considered the propriety of Cullison pleading the intentional infliction of emotional distress as a separate claim. While recognizing that such a claim had not previously been recognized as an independent tort in Indiana, the court adopted a definition of the tort and held that "under proper circumstances, liability will attach to a defendant for an intentional infliction of emotional distress." 570 N.E.2d at 31. In our view, this was the supreme court's pronouncement that

the intentional infliction of emotional distress would be recognized as an independent cause of action in Indiana. This view finds support in *Stump v. Commercial Union*, 601 N.E.2d 327, 332 (Ind.1992) (in connection with certified question on whether plaintiff may maintain certain causes of action against employer's worker's compensation carrier, supreme court stated that "Indiana law will recognize a cause of action for intentional infliction of emotional distress[,]" citing *Cullison*, 570 N.E.2d at 31); and *Watters v. Dinn*, 633 N.E.2d 280, 292 (Ind.Ct.App.1994) (noting that in *Cullison*, 570 N.E.2d 27, "our supreme court adopted the tort of intentional infliction of emotional distress."), *trans. denied.*

Because the intentional infliction of emotional distress is now recognized as an independent tort, and is no longer tied to a rule of damages, the claim can stand alone. There is no requirement that the plaintiff prove a host tort.

We must now consider whether a genuine issue of material fact exists as to whether the Howard County defendants engaged in extreme and outrageous conduct that intentionally or recklessly caused Conwell severe emotional distress. Conwell relies on the language in *Cullison*, 570 N.E.2d at 31, that "[i]t is the intent to harm one emotionally that constitutes the basis for the tort[,]" and claims that a material issue of fact exists regarding whether Beatty intended to cause him emotional harm.

■ For summary judgment purposes, we will agree with Conwell that there is a material issue of fact regarding whether Beatty intended to cause Conwell emotional injury. Liability will not lie, however, unless Beatty's conduct was extreme and outrageous. Conduct is extreme and outrageous:

> "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' "

Restatement (Second) of Torts § 46 cmt. d (1965).

We hold that as a matter of law, Beatty's conduct was not extreme and outrageous. Beatty held a press conference during which he made true, non-defamatory statements. He executed valid arrest and search warrants. The fact that Beatty may have been more zealous in executing the warrants than the circumstances required does not render his conduct beyond all possible bounds of decency. Further, Beatty's attempt to deny Conwell his pension, based on the mistaken assumption that Beatty had the authority to do so, was nothing more than a misunderstanding of Beatty's authority which was quickly corrected and the pension awarded. The Howard County defendants were entitled to summary judgment on Conwell's intentional infliction of emotional distress claim.

### IV. § 1983 Claim

Conwell claims he has a civil rights claim for a violation of his liberty interest in his good name. He cites *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136 (7th Cir. 1984).

■ In *Lawson*, a police radio dispatcher was fired following her husband's arrest for suspected auto theft. The sheriff made statements to the local newspaper that Lawson was fired because her job gave her access to the computer that contained automobile registration information. *Id.* at 1138. A few days after she was fired, Lawson was offered and declined alternative employment by the county. *Id.*

The Seventh Circuit discussed the applicable law:

> "[T]he courts have found a deprivation of liberty when the employee was fired for a publicly announced reason that impugned his moral character. The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession or other calling. This liberty must not be confused with the right to a job; states have no constitutional duty to be employers of last resort; but if a state excludes a person from a trade or

calling, it is depriving him of liberty, which it may not do without due process of law. And when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.

"But this also implies, and the cases make clear, that there is no deprivation of liberty if the employee is not fired. He cannot in such a case complain of exclusion from his occupation."

*Id.* at 1138–39 (citations omitted). Here, Conwell resigned; he was not fired. According to *Lawson*, this fact precludes Conwell's recovery on his § 1983 claim. The Howard County defendants were entitled to summary judgment on this claim as well.

## CLAIMS AGAINST BIG R DEFENDANTS

### I. Malicious Prosecution

A plaintiff establishes a malicious prosecution claim by proving that the defendants "instituted or caused to be instituted a prosecution against the plaintiff, that the defendant[s] acted maliciously in doing so, that the prosecution was instituted without probable cause, and that the prosecution terminated in the plaintiff's favor." *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 519 (Ind. Ct.App.1989), *trans. denied* (1990). "Probable cause to commence criminal proceedings exists when a reasonable inquiry would induce a reasonably intelligent and prudent person to believe that the accused committed the crime charged. It exists when, from an apparent state of facts, a reasonably intelligent and prudent person would be induced to act as did the person who is charged with the burden of having probable cause to act." *Kroger Food Stores, Inc. v. Clark*, 598 N.E.2d 1084, 1088 (Ind.Ct.App.1992), *trans. denied* (1993). "[T]he element of malice may be inferred from a total lack of probable cause, from the failure to make a reasonable

or suitable inquiry, and from a showing of personal animosity." *Id.* at 1089.

"A judicial determination of probable cause in a criminal proceeding constitutes prima facie evidence of probable cause in a subsequent malicious prosecution suit. However, the prima facie case may be rebutted by evidence that shows the finding of probable cause was induced by false testimony or fraud, or other improper means such as the defendant withholding material facts at the hearing. When a judicial determination of probable cause has been made, the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case."

*K Mart Corp. v. Brzezinski*, 540 N.E.2d 1276, 1280 (Ind.Ct.App.1989) (citations omitted), *trans. denied* (1990).

Conwell recognizes that a judicial determination of probable cause is prima facie evidence of probable cause in a subsequent malicious prosecution claim, but argues that a material issue of fact exists concerning whether he rebutted the prima facie case. The material issue of fact alleged, again, is whether the K–Mart incident occurred. Conwell claims it did not; Cappoli claims that it did.

Whether the K–Mart incident occurred is not a material fact with respect to the malicious prosecution claim. Even if we assume that Cappoli's statement was false, Conwell has not established the elements of malicious prosecution. First, none of the Big R defendants instituted or caused to be instituted a prosecution against Conwell. The prosecution was instituted by the prosecutor who made an independent determination of whether to pursue criminal charges after reviewing all of the information obtained by the Sheriff's Department's independent investigation. Second, the fact that Cappoli's statement regarding the K–Mart incident may have caused Big R to focus its attention on Conwell while he shopped in the store does not negate the other evidence supporting probable cause. *See* Claims Against Howard County Defendants, § II, *supra*. The fact that Conwell later presented evidence that

the K–Mart incident may not have occurred is not material. There is no genuine issue of material fact on Conwell's malicious prosecution claim against the Big R defendants.

## II. Defamation

 The Big R defendants claim that summary judgment was appropriate on Conwell's defamation claim because Cappoli's statements were protected by the qualified privilege set forth by the Indiana Supreme Court in *Bals v. Verduzco,* 600 N.E.2d 1353 (Ind.1992). The qualified privilege protects "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral or social, if made to a person having a corresponding interest or duty." *Schrader v. Eli Lilly and Co.,* 639 N.E.2d 258, 262 (Ind.1994) (citing *Bals,* 600 N.E.2d at 1356). Absent a factual dispute, whether the qualified privilege protects a statement is a question of law. *Bals,* 600 N.E.2d at 1356. Statements made among store employees while investigating a possible shoplifting incident are protected by the qualified privilege. *K Mart Corp. v. Brzezinski,* 540 N.E.2d at 1282. The qualified privilege may be lost if: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Schrader,* 639 N.E.2d at 262.

 Conwell argues that there is a material issue of fact as to whether Cappoli's statement was made without belief or grounds for belief in its truth. Thus, the focus of Conwell's argument is on whether the privilege was abused, not on whether the privilege applies.

The designated materials relevant to this issue are Conwell's and Cappoli's affidavits. Conwell asserted in his affidavit:

"14. That as an ordinary law enforcement engaged [sic] in his deputies [sic]. I have been involved in the arrests and or investigation of many persons.

"15. That it is common or customary for a law enforcement officer to incur anger or bad feelings of citizens even though he is unaware of the reasons (i.e. arrest or investigation of an acquaintance).

"16. That I know of no reason why Tammy Cappoli would falsely accuse me of being a price switcher (at either K–Mart or Big R) other than ill will or bad feelings toward myself."

*Cappoli Record* at 129. Cappoli, on the other hand, stated in her affidavit:

"9. That affiant had no malicious intent to injure Larry Conwell; no personal spite or ill will against Larry Conwell; and no evil desire to degrade and injure Larry Conwell when she reported the incident at Fleet Supply Incorporated to Robin Johanning."

*Cappoli Record* at 40. The averments in Conwell's affidavit are insufficient to create a material issue of fact as to Cappoli's belief in the truth of her statement. Conwell makes nonspecific allegations about reactions of the general public toward law enforcement officers. He makes no allegation that he had ever encountered Cappoli or any of her acquaintances in his law enforcement activities. Indeed, aside from his self-serving speculation that Cappoli was motivated by ill will or bad feelings, Conwell knew of no reason why Cappoli would make false statements about him. The qualified privilege was not abused; the Big R defendants were entitled to judgment as a matter of law on Conwell's defamation claim.

## III. Intentional Infliction of Emotional Distress

 As stated above, an intentional infliction of emotional distress occurs when " 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another....' " *Cullison,* 570 N.E.2d at 31. In *Cullison,* our supreme court recognized that the intentional infliction of emotional distress was actionable, but upheld a summary judgment because the facts of the case did not support a finding that the defendants intended to cause the plaintiff emotional injury. *Id.* The facts underlying *Cullison* were that the five defendants confronted the plaintiff in his home to discuss the plaintiff's recent encounter with a sixteen-year-old girl. One of the defendants was the girl's father, Ernest, who entered Cullison's home while wearing a revolver in a

holster strapped to his thigh. The supreme court rejected Cullison's contention that the defendants' knowledge that he disliked guns, coupled with Ernest's wearing the gun, was enough to support an inference of intent to inflict emotional injury on Cullison. *Id.*

The same is true here. There is no evidence in the record to support an inference that the Big R defendants intended to cause Conwell emotional injury. Conwell claims that the genuine issue of material fact precluding summary judgment is whether the Big R defendants' actions caused his emotional distress. We cannot agree. Regardless of whether the Big R defendants' conduct actually caused Conwell emotional injury, there is no evidence that they intended to cause such injury. The Big R defendants were entitled to summary judgment on this claim as well.[2]

Affirmed.

SULLIVAN and DARDEN, JJ., concur.

---

**2.** Conwell alleges a separate claim for "negligence or gross negligence" against the Big R defendants. He relies on a definition of gross negligence used by this court in the context of jury instructions on punitive damages. *See Sutherlin,* 544 N.E.2d at 524. In his brief, Conwell asserts that this separate claim involves a factual question similar to the one involved in his intentional infliction of emotional distress claim. Because there are no factual issues with respect to the emotional distress claim, it follows that no factual issues exist with respect to the negligence or gross negligence claim as well.